UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JESSICA W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1209-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Jessica W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on January 10, 2017, alleging disability beginning September 1, 2015 (the disability onset date), due to: (1) paranoid schizophrenia; (2) depression; (3) anxiety; and (4) lower back pain. Transcript ("Tr.") 196-205,

237. The claims were denied initially on April 28, 2017, after which Plaintiff requested a hearing. Tr. 94, 11-114. On May 3, 2019, Administrative Law Judge JuanCarlos Hunt (the "ALJ") presided over a video hearing from Alexandria, Virginia. Tr. 21. Plaintiff appeared and testified in West Seneca, New York, and was represented by Nicholas Divirgilio, an attorney. Tr. 21. Jeannie Deal, M.S., C.R.C., an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. Tr. 21, 64, 279.

The ALJ issued an unfavorable decision on June 13, 2019, finding that Plaintiff was not disabled. Tr. 21-33. On July 6, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's June 13, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.     The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his June 13, 2019 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.

2.  The claimant has not engaged in substantial gainful activity since September 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: schizoaffective disorder, bipolar disorder, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  The claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to hazards, such as unprotected heights, machines with moving mechanical parts, and driving employer vehicles; she can understand, remember, and carry out simple instructions; she frequently can interact with supervisors and occasionally with coworkers and the public; she can make simple work related decisions; she can tolerate few changes in a routine work setting; and, she will be off task 10 percent of day due to, for example, attention/concentration lapses.

6.  The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on June 17, 1981 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964) (Ex. 2E).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 21-33.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on January 10, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 33. The ALJ also determined that based on the application for supplemental security benefits protectively filed on January 10, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts three points of error, all of which challenge the ALJ's RFC finding. *See* ECF No. 11-1 at 1, 19-30. First, Plaintiff contends that the ALJ improperly included a highly specific off-task limitation in the RFC which was not supported by substantial evidence. *See id*. at 19-22. Next, Plaintiff argues that the ALJ crafted the mental portion of the RFC finding based on his "lay opinion" after assigning "little" or "some" weight to the opinions of record; improperly cherry-picked the evidence; and incorrectly attributed every instance of Plaintiff's worsening symptoms to noncompliance. *See id*. at 22-28. Finally, Plaintiff argues that the ALJ failed to consider Plaintiff's back pain limitations in assessing her RFC.  *See id*. at 28-30.

In response to Plaintiff's first point, the Commissioner asserts that the ALJ reasonably explained his reasoning for including a 10% off-task limitation in his RFC fining. *See* ECF No. 12-1 at 10-13. Furthermore, argues the Commissioner, the ALJ properly considered the opinion evidence, and his RFC finding was supported by substantial evidence. *See id*. The Commissioner

also maintains that, contrary to Plaintiff's argument, the ALJ did not attribute every instance of Plaintiff's worsening symptoms to noncompliance, but instead, observed that Plaintiff had a history of non-compliance, and her functioning improved when she was compliant with treatment. *See id*. Finally, argues the Commissioner, the ALJ properly found that Plaintiff did not have a severe lumbar spine impairment, and therefore, was not required to include limitations relating to such in his RFC. *See id*. at 14-16.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's decision was thorough and well-reasoned. The ALJ adequately considered the evidence of record, including the medical opinion evidence, the treatment notes, the objective findings, and Plaintiff's improvement with treatment, and his RFC determination is supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. §

416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff first contends that the ALJ improperly included a highly specific off-task limitation in the RFC which was not supported by substantial evidence. *See* ECF No. 11-1 at 19-22. Plaintiff argues that the 10% off-task limitation included in the RFC is unfounded because it is not supported by a medical opinion. *See id*. However, a medical opinion is not required for every limitation, let alone one that is favorable to the claimant. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0–10%) to illustrate Johnson's limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").

Furthermore, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as

medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). It is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

Here, despite the fact that no physician issued an opinion regarding off-task limitations for Plaintiff, the ALJ explained that he included an off-task limitation of 10% of the workday "due to, for example, [Plaintiff's] attention/concentration lapses." Tr. 26, 57. Because the ALJ afforded Plaintiff the benefit of the doubt by including this limitation, the Court finds there is no ground for remand. *See Dominique M. v. Comm'r of Soc. Sec.*, No. 20-CV-01247, 2021 WL 3931141, at *4 (W.D.N.Y. Sept. 2, 2021) (finding that although no medical source in the record stated plaintiff would be off-task a specific percentage of the workday, the ALJ properly explained he included an off-task limitation to account for position changes and concentration difficulties that plaintiff may have as a result of her pain or pain medication.); *Lesanti v. Comm'r of Soc. Sec.*, 2020 WL 500986, *6 (W.D.N.Y. 2020) ("[t]he fact that the ALJ afforded [p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand").

Furthermore, Plaintiff has not shown that she required more than a 10% off-task limitation, as was her burden to show. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found). After considering

the record as a whole, including evidence of Plaintiff's lapses in attention and concentration, the ALJ appropriately assessed a 10% off-task limitation in his RFC finding. Accordingly, the Court finds no merit to Plaintiff's challenge to the off-task limitation assessed by the ALJ.

Plaintiff next argues that the ALJ did not properly consider the opinions of record and crafted the mental portion of the RFC finding based on his "lay opinion." *See* ECF No. 11-1 at 22-28. Contrary to Plaintiff's assertion, the ALJ did not outright reject any of the opinions. Rather, in assigning the opinions "little" or "some" weight, the ALJ determined that Plaintiff's functional limitations were more restrictive than the medical sources opined. "Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand." *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782, *2 (W.D.N.Y. 2018) (emphasis in original). *See also Wakefield v. Comm'r of Soc. Sec.*, 2020 WL 3100852, *5 (W.D.N.Y. 2020) ("I find that remand is not warranted on the grounds that the ALJ included greater limitations in her RFC determination than those opined by [the consulting physician] or assessed a sit/stand option based upon [plaintiff's] own testimony."); *Catalfamo v. Berryhill*, 2019 WL 1128838, *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "impose[d] more restrictions than th[ose] two opinions suggested were necessary").

Here, the ALJ assigned little weight to the April 2017 opinion of the state agency medical consultant that Plaintiff did not have severe mental impairments, stating that the record reveals that Plaintiff's mental impairments were indeed severe. Tr. 30, 79-80. The ALJ also assigned little weight to the March 2017 opinion of consultative psychologist Christine Ransom, Ph.D. ("Dr. Ransom"), that Plaintiff had no to mild functional limitations. Tr. 31, 478. Consistent with the record overall, including evidence of Plaintiff's hospitalizations and ongoing treatment, the ALJ

found that Plaintiff had "a severe mental medically determinable impairment with greater than mild mental limitations." Tr. 31.

The ALJ gave some weight to the opinions of Erie County Medical Center ("ECMC") Emergency Department ("ED") physicians Laura Hanrahan M.D. ("Dr. Hanrahan"), and Mark Zambron M.D. ("Dr. Zambron"), both of whom treated Plaintiff during inpatient hospitalizations in August 2016 and November 2018, respectively. Tr. 31, 407, 494. With respect to Dr. Hanrahan's opinion that Plaintiff had no restrictions and could return to work, the ALJ assigned it some weight because it was consistent with the objective evidence of record at the time which showed Plaintiff's "drastic improvement on medication" while hospitalized. Tr. 31, 405, 459-61. Similarly, the ALJ assigned some weight to Dr. Zambron's opinion that Plaintiff had no restrictions at discharge, because his opinion was consistent with Plaintiff's improvement with treatment during her hospitalization in 2018. Tr. 31, 494.

However, based on the totality of the evidence, including evidence at the hearing level and Plaintiff's ongoing treatment, the ALJ found that Plaintiff was more limited than any of the four physicians opined. Tr. 31. *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone); *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) ("The ALJ was entitled to weigh all of the evidence and make an RFC finding that corresponds with the record as a whole."). Thus, the record as a whole is consistent with the ALJ's step two finding that Plaintiff had severe mental impairments that resulted in an RFC limiting her to simple work with few changes to her routine work setting, limited interaction with others, and an allowance for off-task time. Tr. 23, 26, 31.

In addition to the medical opinions of record, the ALJ also reasonably considered that Plaintiff's mental status examination findings were benign when she took her medications and was compliant with attendance and treatment, and they deteriorated when she was not compliant. Tr. 26-31. *See Matta*, 508 F. App'x at 57 (finding that substantial evidence supported ALJ's finding that Matta's bipolar disorder, which may be vulnerable to mood swings, deteriorated only after he stopped taking his medication and that his condition improved with treatment). Plaintiff contends that "[t]he ALJ further attributed every instance of Plaintiff's worsening symptoms to noncompliance." *See* ECF No. 11-1 at 24.   However, the record does not support Plaintiff's contention.

As the ALJ noted, Plaintiff's mental status examinations remained benign through January 2017, but then Plaintiff began missing appointments. Tr. 30 (citing Tr. 438, 440, 484). The ALJ also noted that on more than one occasion Plaintiff was discharged from treatment due to noncompliance.  Tr. 30 (citing 544, 547, 673). The ALJ also observed that Plaintiff was non-compliant with treatment in several instances, but when she was compliant with treatment, her functioning improved, and she no longer endorsed delusional thoughts. Tr. 27, 29, 30. For example, Plaintiff was admitted to the hospital on July 20, 2016, for delusional thoughts, and "within a few days [of treatment], [she] started to demonstrate drastic improvements in her symptoms." Tr. 27, 401-05. Plaintiff also reported that two years of hearing voices stopped after she started taking Haldol.  Tr. 460. She acknowledged that Haldol was helpful to her, and she felt "a lot clearer." *Id*. Plaintiff was discharged on August 24, 2016, with a prescription for Haldol injections. *Id*. At the time of discharge, Plaintiff was organized, goal directed, appropriate and reality based. *Id*. As the ALJ noted, Plaintiff's mental status examination findings thereafter were benign. Tr. 30, 438, 440, 446, 476-79, 553, 665, 669.

In September 2016, Plaintiff tolerated her Haldol injection well, attended therapy, denied hallucinations and her mood was observed to be euthymic. Tr. 27, 30, 408. The following month, Plaintiff reported that she had moved into her own apartment, worked in a barbershop 30 hours per week, and her ex-husband and child had moved in with her. Tr. 27, 30, 447-49. Plaintiff's November 2016 through January 2017 mental status examination findings were benign, although in December 2016, she reported increased anxiety. Tr. 27, 443-44, 447.

In March 2017, Plaintiff told consultative psychologist Dr. Ransom that she used her medication to help herself get through what she needed to do, and she denied symptoms of anxiety, depression, panic attacks, manic symptomatology and thought disorder. Tr. 476-77. Dr. Ransom observed normal mental status findings such as full affect, neutral mood, clear sensorium, coherent and goal directed thought process, intelligible speech, appropriate eye contact, and intact attention and concentration. Tr. 477-48. Plaintiff continued to do well through August 14, 2017, when a provider at Mid-Erie Counseling noted that Plaintiff had normal mental status examination findings. Tr. 553, 566. She was also found to be cooperative and pleasant and appeared receptive to intervention techniques. Tr. 554.

When Plaintiff's symptoms worsened and she was hospitalized in October 2018, the ALJ noted a hospital treatment stating that Plaintiff's hospitalization was "in the context of being noncompliant with her medications and experiencing an exacerbation of her psychotic symptoms in the community." Tr. 29, 492. Following hospitalization and administration of medications, Plaintiff stabilized fairly quickly, her insight improved, and she was cooperative in developing an appropriate discharge plan. Tr. 29, 493. On the day of discharge, Plaintiff was cooperative, had good eye contact and speech, was organized, had reality-based thoughts, did not speak of any delusion, and was not paranoid. Tr. 29, 493. Thereafter, in February 2019, an ECMC social worker

noted that Plaintiff was active in psychotherapy and compliant with medication for the first half of her treatment, but that she expressed reluctance to take her medication, she had not attended sessions in weeks, and her case was at risk of closure. Tr. 29, 680. Based on the foregoing, the ALJ reasonably observed that Plaintiff's mental status examination findings improved when she took her medications and was compliant with treatment, and that they deteriorated when she was not compliant.

As the ALJ further noted, Plaintiff reported activities that were inconsistent with totally disabling limitations. Tr. 30. She was able to dress, bathe, groom, cook, prepare food, clean, do laundry, shop, manage money, drive, socialize with family and friends regularly, watch television, and read (Tr. 478), and she worked as a hairdresser (Tr. 447). Tr. 30. Furthermore, the ALJ noted no treating source had opined that Plaintiff had limitations that would preclude work due to a medically determinable impairment. *Id*. Thus, the ALJ's conclusion that the objective evidence did not support further limitations beyond those found in the RFC was well supported.

The ALJ also discussed Plaintiff's Global Assessment of Functioning ("GAF")[1] scores of 30 and 50 that were assessed prior to the relevant period. Tr. 30-31. In this case, the ALJ reasonably gave these scores little weight, giving more weight to the objective evidence of record that more accurately described Plaintiff's impairments and limitations and noting that the GAF score is no longer considered a best practice in the mental health field and was eliminated due to its inherently subjective nature. Tr. 31. As the ALJ noted, GAF scores are designed to consider factors outside those used in disability determinations, and the Social Security Administration has limited the

---

[1] The GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information." *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018). GAF scores are designed to consider factors outside those used in disability determinations. The Court recognizes that the Social Security Administration has limited the manner in which GAF scores are used because they are generally not useful without additional supporting description and detail. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (internal citations omitted). In this case, Plaintiff's scores were considered in conjunction with other medical evidence.

manner in which GAF scores are used because they are generally not useful without additional supporting description and detail. Tr. 31. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (internal citations omitted).

Plaintiff also challenges the ALJ's finding that Plaintiff can frequently interact with supervisors and occasionally with coworkers and the public. *See* ECF No. 11-1 at 27-28. However, as the ALJ explained, the RFC finding's limitation to interacting with supervisors no more than frequently and only occasionally with co-workers and the public, was based on Plaintiff's claim of difficulty in crowds. Tr. 26, 28, 29, 55. The ALJ also found Plaintiff can understand, remember and carry out simple instructions, make simple work-related decisions and tolerate few changes in a routine work setting based on the overall record, including Plaintiff's testimony regarding trouble with her memory, attention and concentration, as well as mental status examination findings of anxiety, restlessness, disorganized thoughts and impaired judgment. Tr. 29, 57, 333, 401-07, 708. As noted above, it is Plaintiff's burden to prove a more restrictive RFC than the ALJ assessed, and this Plaintiff has failed to do.  *See Smith*, 740 F. App'x at 726; *Poupore*, 566 F.3d at 305-06. (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.). For all the reasons explained above, Plaintiff's challenges to the ALJ's well-supported RFC finding are unpersuasive, and the Court finds no error.

Finally, Plaintiff argues that the ALJ failed to consider her back pain limitations in assessing her RFC. *See* ECF No. 11-1 at 28-30. This argument likewise fails. As an initial matter, the fact that Plaintiff does not challenge the ALJ's step two finding that she did not have a severe lumbar spine impairment undermines her argument. *See Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 187 (N.D.N.Y. 2019) ("[I]t is hard to argue that the ALJ erred in failing to include environmental limitations in the RFC without first claiming that an underlying condition [ ] was

sufficiently "severe" to impose more than a "minimal effect" on a plaintiff's ability to work."). Here, the Court can find no fault with the ALJ's step two finding. As the ALJ correctly found, while Plaintiff complained of low back pain, the record did not support a finding of a severe lumbar spine impairment. Tr. 24. Other than having been involved in a motor vehicle accident on August 7, 2017 (Tr. 499-501), Plaintiff did not seek treatment for her lumbar spine. In fact, Plaintiff's complaints of back discomfort resolved while she was in the ED following the August 7, 2017 accident, and she was discharged the same day. Tr. 499, 501. The ED treatment note indicates that Plaintiff was fully ambulatory, had no tenderness to palpation of the spine, had full ranges of motion of all extremities, and negative straight leg raise testing. Tr. 500.

Consultative physician Nikita Dave, M.D. ("Dr. Dave"), conducted an examination in March 2017. Tr. 481. Dr. Dave observed that Plaintiff had a normal gait and station; used no assistive device; had normal grip strength and normal range of motion int the cervical spine and upper and lower extremities; negative straight leg raise testing; and no muscle atrophy. Tr. 482-83. She diagnosed low back pain and opined that Plaintiff had "mild to moderate limitations for prolonged sitting, prolonged standing, lifting, carrying, pushing, pully of heavy objects, and repetitive bending and twisting through the lumbar spine." Tr. 483. As the ALJ noted Dr. Dave has knowledge of the Agency's disability program, and her opinion was consistent with her specialty. Tr. 24. The ALJ gave this opinion some weight, reasonably concluding that because Dr. Dave's examination findings were largely benign and Plaintiff's x-rays were negative, the record did not support moderate physical limitations. Tr. 24, 482-83, 487.

Based on these findings, the ALJ properly concluded that Plaintiff did not have a severe lumbar spine impairment, and she was able to perform work at all exertional levels. Tr. 24, 26. *See Rosario v. Colvin*, No. 13-CV-1627, 2017 WL 1314215, at *23 (S.D.N.Y. Feb. 7, 2017), *report*

*and recommendation adopted*, No. 13-CV-1627, 2017 WL 1284900 (S.D.N.Y. Apr. 5, 2017) (because substantial evidence supported the ALJ's finding that Plaintiff's depressive disorder was not severe, there was no error in the ALJ's decision not to include related limitations in Plaintiff's RFC); *Pressley v. Colvin*, No. 15-CV-04245 (SN), 2016 WL 4940204, at *13 (S.D.N.Y. Sept. 16, 2016) ("Because the ALJ considered evidence of [the claimant]'s mental health impairments and properly concluded that they did not interfere with his activities of daily living [at step two], there was no error in his failure to include evidence of [the claimant]'s mental health impairment in his RFC analysis.").

In addition, the jobs found by the ALJ at step five as being available to someone with Plaintiff's vocational profile and RFC included two light level jobs (housekeeper and cleaner/polisher). Tr. 32, 66-67. Courts within this Circuit have held that opinions of "mild to moderate limitations" physical limitations support RFC findings for "light work." *See, e.g., Gerry v. Berryhill*, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (mild to moderate limitations constitute substantial evidence in support of RFC for light work); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *13-15 (W.D.N.Y. Feb. 25, 2015) (holding that the ALJ's finding that claimant could sit, stand, and walk for six hours a day was consistent with the opinion that he was moderately limited in his ability to walk for prolonged periods) (compiling cases). Accordingly, any failure by the ALJ to include mild-to-moderate physical limitations in the RFC is insufficient to warrant remand. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding that agency reconsideration is not required when, in the absence of error, the record would still dictate the same conclusion); *see also Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d at 187 (finding that the jobs identified by the VE and adopted by the ALJ do not require exposure to

environmental conditions known to be challenging to asthmatics, so any failure to include environmental restrictions in the RFC is insufficient to warrant remand).

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault*, 683 F.3d at 448 (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record, including the objective medical findings, the medical opinions, and Plaintiff's subjective

complaints, and the ALJ's finding that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Court finds no error.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE